**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| CLAYTON COLWELL, | : | |
| Plaintiff, | : | Case No. 3:06CV345 |
| vs. | : | District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | :<br><br>: | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

**I.      INTRODUCTION**

Plaintiff Clayton Colwell suffers from multiple medical problems including, to name a few, back pain, depression, anxiety, and chronic bronchitis.  His health problems caused him to stop working in 1996.  Several years later, on April 29, 2002, he sought assistance from the Social Security Administration by applying for Supplemental Security Income (SSI).

Throughout various administrative proceedings, Plaintiff was unable to convince the Social Security Administration that he was under a "disability," and consequently, his

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

SSI application failed for lack of this crucial component of SSI eligibility.  *See* Tr. 18-37; *see also* 42 U.S.C. §1381a.  Once the Social Security Administration issued its final decision denying Plaintiff's SSI application, the decision became subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #13), the Commissioner's Memorandum in Opposition (Doc. #15), Plaintiff's Reply (Doc. #16), the administrative record, and the record as a whole.  Plaintiff seeks an Order reversing the ALJ's decision and granting him SSI or, at a minimum, a remand of this case to the Social Security Administration to correct certain errors.  The Commissioner seeks an Order affirming the ALJ's decision.

## II.     PROCEDURAL BACKGROUND

The most prominent phase of Plaintiff's administrative proceedings occurred in three phases: (1) a hearing before Administrative Law Judge (ALJ) Daniel R. Shell, who concluded that Plaintiff was not under a "disability" and thus not eligible to receive SSI, *see* Tr. 113-127; (2) Plaintiff's administrative appeal, leading to a remand by the Appeals Council for further consideration by a different ALJ, *see* Tr. 147-48; and (3) a second hearing, this one conducted by ALJ Melvin A. Padilla, who issued a written decision concluding that Plaintiff was not under a "disability" as defined by the Social Security Act, *see* Tr. 18-37.

The Appeals Council based its remand decision on the existence of additional evidence submitted by Plaintiff (Tr. 147-48) – namely, a report by Dr. Reddy dated

February 8, 2004.  (Tr. 58-62).  In Dr. Reddy's opinion, Plaintiff was capable of performing only sedentary work activities based on MRIs of his cervical and lumbar spine, results of physical examination, and "correlation of symptoms with findings and MRI."[2] (Tr. 58).

On remand, after the second administrative hearing, ALJ Padilla rejected Dr. Reddy's report and instead found Plaintiff able to perform a limited range of light work.[3] (Tr. 36).  This, among other findings, led ALJ Padilla to conclude that Plaintiff's medical problems did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 18-37).

ALJ Padilla's decision constituted the Social Security Administration's final decision, and it is therefore the focal point of the parties' arguments and judicial review in this case.  The Court has reviewed the full administrative record in light of the parties' respective arguments and under the required standards of review, which will be identified after some additional factual development.

---

[2] Under the Regulations, "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §404.1567(a).

[3] Under the Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...."  20 C.F.R. §404.1567(b).

**III. ADDITIONAL BACKGROUND**

On the date of ALJ Padilla's decision, Plaintiff's age (53) placed him in the category of a "person closely approaching advanced age" for purposes of resolving his SSI application. *See* 20 C.F.R. §416.963(d); *see also* Tr. 36. Plaintiff attended school through the eighth grade thus obtaining a "limited education." *See* 20 C.F.R. §416.964(b).

Plaintiff explains in his Statement of Errors that he has not worked in the past 15 years and that he spent many years in prison for armed bank robbery (27 of the 30 years before he filed for SSI). (Doc. #13 at 2). He had previously worked in construction. *Id*.

At Plaintiff's first administrative hearing (before ALJ Shell in 2003), he testified that chronic back pain kept him from working. *See* Doc. #13 at 7 (and record citations therein). He experienced pain in his neck and weakness in his arms and shoulders at that time. *Id*. His pain bothered him mostly in his lower back. He explained, "It hurts real bad, but sometimes it hurts so bad it feels like you're being punched with a knife...." *Id*. Plaintiff estimated the severity of his pain at the level of 8 on a scale of 1 to 10 (10 representing the most severe pain). To help relieve his pain, he took Darvocet, Vicodin, and Celebrex, and he took Flexeril to relieve spasms. The pain medications sometimes brought his pain down to the level of 6. *Id*.

Plaintiff indicated that because of his pain he no longer stoops or reaches and does not lift more than 5 to 10 pounds. Plaintiff's Statement of Errors indicates that he informed ALJ Shell that he "did not think that he could walk more than [a] block without

pain or stand for more than 10 minutes in an hour." (Doc. #13 at 7). He thought that he could sit for 30 minutes at a time. He felt most comfortable lying down. *Id*.

Plaintiff later testified, during ALJ Padilla's hearing (in December 2005), that he had serious pain in his lower back, which sometimes got so bad he had trouble walking. Neither use of a back brace nor epidural injections eased his pain. (Tr. 74). His pain medications included Methadone and Neurontin; he took Zanaflex for spasms. He estimated that the pain-medication regimen lowered his pain to the level of a 5. (Tr. 75). By this time he had also begun experiencing a shooting pain down his right leg and buttocks. (Tr. 77). Plaintiff stated that he could only walk for 10 to 15 minutes before he needed to take a break and could only stand for 20 minutes without leaning against something. (Tr. 80). He thought he could sit for 30 minutes before he would need to get up. He has trouble lifting a gallon of milk.[4] (Tr. 81). Bending over and standing makes his back pain worse. (Tr. 87). He still had some problems with neck mobility. (Tr. 89-90).

Plaintiff also testified during each administrative hearing about his mental health struggles. He explained at the 2003 hearing that he was seeing Dr. Bishop (a treating psychiatrist) every twelve weeks and a therapist every week. Plaintiff indicated that he talked to them about problems from the past and flashbacks from prison. (Doc. #13 at 11)(and record citations therein). He described his anxiety, stating, "it's hard for me to

---

[4] One gallon of milk weighs about approximately 8.5 pounds or slightly more than one gallon of water (≈8.33 lbs.). http//:www.wikianswers.com/Q/; *see* http//:www.unc.edu/~rowlett/units/dictG.html.

5

even be around a lot of people." *Id*.  Plaintiff indicated that medication helps him sleep a little better, but he still did not get a full night of sleep.  He noted that his concentration was not good at all.  He spent most of his day watching television.  *Id*.

At the hearing in 2005, Plaintiff testified about his continuing emotional problems: "I have anxiety really, really bad.  I have paranoid thoughts, different reasons for – I [inaudible] like, I check the doors of the house six, seven times a night.  I have been known to get up in the middle of the night to check the door because I thought I heard something."  (Tr. 77).  He was still seeing Dr. Bishop every three months and his counselor every week.  (Tr. 77-78).  He usually did not go anywhere unless he had an appointment; he did not visit others (Tr. 78); he did not like to be around others so he did not go to church (Tr. 83).  Plaintiff thought counseling and medication was helping him with his problems, but qualified this a bit by testifying, "it's not helping as good as it should or as good as I think it should."  (Tr. 80).

Turning to the other evidence of record, the parties have provided detailed and informative descriptions of Plaintiff's medical records and other pertinent evidence.  *See* Doc. #13 at 1-11; Doc. #15 at 1-11.  In light of this, and upon consideration of the complete record, there is no need to fully reiterate or expand the parties' descriptions.  Still, identifying several medical sources will help frame further review.

Plaintiff relies on the opinions of several medical sources: Dr. Reddy, his treating pain specialist; Dr. Barnes-Lark, his treating physician; Dr. Bishop, his treating psychiatrist; and Ms. Voelkel, LSW, his treating mental health counselor.  (Doc. #13 at

15-20).

The Commissioner relies on the opinions of Dr. Hutson.  The Commissioner explains that Dr. Hutson is a board-certified orthopedic surgeon, who reviewed the record and all the opinions and evidence from Dr. Reddy, Dr. Barnes-Lark, and Dr. Vitols (Plaintiff's selected consultative examiner).  (Doc. #15 at 4-5, 12-16).  Dr. Hutson testified as a medical expert during the hearing held by ALJ Padilla.  (Tr. 96-101).

## IV. THE "DISABILITY" REQUIREMENT AND ADMINISTRATIVE REVIEW

The Social Security Administration provides Supplemental Security Income ("SSI") to indigent individuals, subject to several eligibility requirements.  Chief among these, for purposes of this case, is the "disability" requirement.  To receive SSI, an applicant must be a "disabled individual."  42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  42 U.S.C. §1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.  An SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992).

Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* Tr. 17; *see also* 20 C.F.R.

§416.920(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In the present case, ALJ Padilla determined at Step 2 that Plaintiff has severe impairments of degenerative disc disease of the lumbar and cervical spines, depressive disorder, anxiety disorder, and chronic bronchitis. (Tr. 35). ALJ Padilla found no listing-level impairment at Step 3. (Tr. 35).

The ALJ explained his Step-4 assessment of Plaintiff as follows:

> The claimant retains the residual functional capacity to perform the exertional and nonexertional requirements of light work, but he must be permitted the opportunity to alternate between sitting and standing at thirty to forty[-]five minute intervals in order to maintain comfort, cannot climb ladders, ropes, or scaffolds, work at unprotected heights, or perform repetitive twisting or bending, and must work in a temperature-controlled,

>clean-air environment.  In addition, he is limited to performing unskilled, simple, repetitive tasks that are considered low stress, meaning no production quotas or fast-paced work.

(Tr. 36).

The ALJ's assessment of Plaintiff's Residual Functional Capacity, along with the ALJ's findings throughout his sequential evaluation, led him to conclude that Plaintiff was not under a disability and thus not eligible to receive SSI.  (Tr. 35-37).

## V. JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings.  *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).  "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)).  It consists of "'more than a scintilla of evidence but less than a preponderance...'"  *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential not *de novo*.  *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record, if other substantial evidence supports the ALJ's findings.  *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ does not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein).

## VI. DISCUSSION

### A. The Parties' Contentions

Plaintiff contends that ALJ Padilla erred by relying on the opinions of non-treating medical expert Dr. Hutson rather than the opinions of his treating specialist, Dr. Reddy, his treating physician, Dr. Barnes-Lark, who have concluded – based on objective medical evidence – that he cannot physically perform more than sedentary work. Plaintiff emphasizes that Dr. Hutson "offered no testimony to support the ALJ's conclusions concerning residual functional capacity. The ALJ simply presumed that this was Dr. Hutson's conclusion." (Doc. #13 at 16).

The Commissioner contends that substantial evidence supports the ALJ's assessment of Plaintiff's Residual Functional Capacity to be within a limited range of light exertional work. The Commissioner reasons, in part:

> The record demonstrates that Plaintiff has sought and obtained

>statements by his physicians and social worker, that he was disabled, unable to perform sedentary work, or had extreme physical or mental limitations. Generally, these statements were provided in response to an adverse decision on his claim for benefits, or in anticipation of a new step in the review process on his claims.  Plaintiff successfully obtained a remand after his first adverse decision, when he obtained an opinion of disability by physician Dr. Barnes-Lark, that he was disabled, and submitted in connection with his request for review (Tr. 41-62, 145-48).  Since that time Plaintiff has gone to his physicians repeatedly, and secured opinion after opinion of disability, or functional limitations inconsistent with the ability to perform even sedentary work.  However, as the ALJ reasonably observed, clinical findings, with respect to both Plaintiff's physical and mental impairments, have been remarkably benign; they simply fail to support the extreme limitations suggested by Plaintiff's physicians (Tr. 23-26).  The lack of support for these opinions, coupled with the fact that they were repeatedly solicited by Plaintiff or his attorneys for his claim for benefits, provided a reasonable basis for the ALJ to reject them.  *See Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)....

(Doc. #15 at 12)(parenthetical information about *Dixon* omitted).

The Commissioner relies on the opinions of Dr. Hutson.  The Commissioner also

argues:

    1.    The ALJ correctly rejected the opinions of Drs. Reddy and Dr. Barnes-Llark;

    2.    Plaintiff incorrectly asks the Court to reweigh the medical source opinions;

    3.    The opinions of Plaintiff's medical sources are unsupported and 'coupled with the fact that they were repeatedly solicited by Plaintiff or his attorneys for claim benefits, provided a reasonable basis for the ALJ to reject them.'[5]

## B. **Applicable Legal Criteria**

An ALJ's evaluation of the various medical source opinions of record begins with

---

[5]  (Doc. #15 at 12)(citing *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)).

treating physicians or psychologists. Under the treating physician rule, the opinions of treating medical sources are entitled to controlling weight as long as the opinions are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. §416.927(d)(2); *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

If these requirements are not met, the treating physician rule does not apply. *Id*. In that event, the evaluation has only just begun: ALJs must continue to weigh the treating source's opinion under the other factors, including, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544.

As to non-treating medical sources, ALJs must evaluate their opinions under the factors of supportability, consistency, specialization, *etc*., described in 20 C.F.R. §416.927(d). The Commissioner's Ruling explains this regulatory mandate, stating, "the rules for considering ... treating sources ... also apply when we consider the opinions of nonexamining sources, including State agency medical ... consultants and other program physicians and psychologists." Social Security Ruling 96-6p, 1996 WL 374180 at *2. The plain language of the Regulations appears to emphasize the mandatory nature of this requirement by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical

12

opinion...."); 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions).

### C. Analysis

The Commissioner's argument that Plaintiff has improperly attempted to secure favorable disability opinions lacks merit, both factually and legally.  Factually, the only support for the Commissioner's argument is the timing of Plaintiff's requests, or his attorney's requests, for opinions from treating medical sources.  Without some evidence indicating that Plaintiff was seeking to secure false or incorrect evidence, the timing of his requests for certain medical source opinions by itself is not probative of an improper or nefarious purpose.  Legally, the applicable Regulation does not identify the Commissioner's concern as one of the factors applicable to evaluating treating or other medical source opinions.  *See* 20 C.F.R. 416.927(d), (f).  And, the Commissioner's reliance on *Dixon* is misplaced.

Although the Court of Appeals for the Seventh Circuit indicated in *Dixon* that it was keeping in mind "the biases that a treating physician may bring to the disability process...," 270 F.3d at 1177, the Court then explored this potential for bias with a careful application of what it saw as the relevant regulatory factors.  In this manner, *Dixon* does not accomplish as much as the Commissioner seeks in this case – an outright rejection of certain medical source opinions based on the mere potential for bias.  *See id*. at 11.  In addition, the Sixth Circuit Court of Appeals cautions a more circumspect approach to the evaluation of treating medical source opinions.  *Cf. Felisky v. Bowen*, 35 F.3d 1027, 1040

(6th Cir. 1994)(finding no merit to the Social Security Administration's contention that "it is not the physician's job to question his or her patient's statements, but is rather to match those statements with a diagnosis.").

 Returning to the ALJ's decision and the applicable legal criteria, ALJ Padilla accurately described the treating physician rule. *See* Tr. 31-32. He then applied the required elements of the treating physician rule to Plaintiff's treating medical sources including Drs. Reddy, Barnes-Lark, Bishop, and Ms. Voelkel (the mental health counselor). Although the ALJ could have better explained the need to continue weighing treating medical source opinions under the remaining regulatory factors, his discussion of the reasons why he credited Dr. Hutson's opinions, rather than the opinions of Plaintiff's treating sources, applied the factors of specialization, supportability, and consistency. *See* 30-32. As such the ALJ's decision applied the correct legal criteria. In addition, a review of the evidence of record as a whole, and to the evidence referred to by the ALJ, *see id.*, and the Commissioner, *see* Doc. #15 at 13-17, confirms that substantial evidence supports the ALJ's application of the required regulatory factors.

 Plaintiff contends that the ALJ's Residual Functional Capacity (RFC) determination is not based on any medical source opinion, and that no medical source opinion contradicts the opinions of his long-term treating counselor and psychiatrist. These contentions lack merit because the ALJ's assessment of RFC involved an administrative determination, not a purely medical determination, *see* 20 C.F.R. §404.1546©. Consequently, the ALJ was not required to adopt verbatim the phrasing of

14

any medical source when assessing Plaintiff's RFC.  As to the ALJ's failure to rely on a mental health opinion contrary to the opinions of Plaintiff's treating psychiatrist and counselor, this was not error because the ALJ did not err in his decision to discount their opinions, and because substantial evidence supported the ALJ's incorporation of less-severe limitations on Plaintiff's mental work abilities into the RFC assessment.  *See* Tr. 30-33 (and evidence discussed therein).  The Court, moreover, reviews the ALJ's RFC assessment – not for complete or exact correlation between the evidence and the ALJ's findings – but for legal error and lack of substantial supporting evidence.  Finding neither in this case, the ALJ's decision must be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability determination be affirmed; and

2. The case be terminated on the docket of this Court.

February 25, 2008

s/ Sharon L. Ovington  
Sharon L. Ovington  
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).